IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TOM BROWN CONTRACTING, INC., a Pennsylvania Corporation, <br><br> Plaintiff, <br><br> v. <br><br> WESTPORT INSURANCE CORPORATION, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 04-1171 <br><br> Judge Conti <br> Magistrate Judge Hay |
| WESTPORT INSURANCE CORPORATION, <br><br> Counter-Claimant, <br><br> v. <br><br> TOM BROWN CONTRACTING, INC., <br><br> Counter-Defendant. | ) ) ) ) ) ) ) ) ) ) |

REPORT AND RECOMMENDATION

I.  RECOMMENDATION

It is respectfully recommended that the Plaintiff's Motion to Alter or Amend Judgment Pursuant to Rule 59(e) (doc. 51) be denied.

II. REPORT

Plaintiff, Tom Brown Contracting, Inc. ("TBC"), commenced the original action seeking a declaratory judgment as well as money damages against Westport Insurance Corporation ("Westport") claiming that Westport has an obligation to provide coverage for or to satisfy a state court judgment obtained by TBC against Westport's insureds, the law firm of Plowman, Spiegel & Lewis, P.C. ("PS&L") and then attorney James A. Lewis ("Lewis").  For

sake of convenience, we repeat verbatim below the largely undisputed facts as set forth in the previous R&R.

PS&L, and specifically Lewis, represented TBC in a lawsuit filed against TBC by WOW Partnership ("WOW"), in November of 1998, in which WOW alleged that TBC had negligently applied a roof coating system on a building owned by WOW causing damage to the roof's foam substrate, and that the cost of repairing the roof was estimated at $157,503. [Chaney Aff., ¶ 2, Exh. A].[1] Although it appears that Lewis filed a timely Answer to the Complaint on TBC's behalf, he neglected to respond to the Amended Complaint as ordered by the Court and on May 12, 1999, WOW's attorney filed a Notice of Praecipe for Entry of Default Judgment against TBC. [Complaint ¶¶ 9, 13]. No answer was forthcoming and a Praecipe for Entry of Default Judgment was subsequently filed resulting in the entry of judgement against TBC on May 25, 1999, in the amount of $157,503. [Complaint ¶¶ 14, 15; Olup Aff., Exh. 4].[2]

One month later, in a letter dated June 25, 1999, PS&L advised Westport that default judgment had been entered against TBS in the WOW lawsuit. [Carman Aff., ¶ 4, Exh. A].[3] The letter also indicated, however, that PS&L had prepared a Petition to Open Judgment Entered by Default, and in a follow up telephone conversation held on July 1, 1999, PS&L informed Westport that a hearing on the petition would be held the following week and that it anticipated that the petition would be granted thereby allowing TBC to file an Answer to WOW's Amended Complaint. [Carman Aff., ¶ 5, Exh. B]. Westport subsequently confirmed the conversation in a letter dated July 12, 1999, wherein it indicated that because PS&L anticipated that the petition to

---

[1] The Affidavit of Robert A. Chaney ("Chaney Aff.") has been submitted by Westport and appears at Docket No. 27-2.

[2] The Affidavit of Jeffrey T. Olup, Esquire ("Olup Aff.") -- TBC's current counsel -- has been submitted by TBC and appears at Docket No. 35-2.

[3] The Affidavit of Janice M. Carman ("Carman Aff.") has been submitted by Westport and appears at Docket No. 27-4.

reopen the judgment would be granted, Westport was closing its file. [Carman Aff., ¶ 6, Exh. C]. It appears, however, that PS&L never presented the petition to open judgment for hearing and, consequently, the judgment entered against TBC remained in effect. [Complaint ¶ 19; Carman Aff., ¶7; Olup Aff., Exh. 4].

In order to satisfy the judgment, WOW and TBC entered into a Forbearance Agreement on March 16, 2000, establishing a repayment schedule. [Complaint ¶ 26; Olup Aff., Exh. 6]. In accordance with the agreement, TBC made payments of $50,000 on March 17, 2000 and April 10, 2000 and a final payment of $67,091.07 on July 28, 2000, thereby paying a total judgment of $167,091.07. [Complaint ¶¶ 27-28; Chaney Aff., ¶ 2, Exhs. B, C; Olup Aff., Exhs. 6, 7].

Thereafter, on February 1, 2001, TBC filed a malpractice suit against Lewis and PS&L in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging that the defendants were negligent in allowing default judgment to be entered against TBC in the WOW litigation. [Complaint ¶ 7]. The case proceeded through the pleading and discovery stages with Lewis representing himself as well as PS&L, neither of which ever notified Westport that suit had been filed against them. [Complaint ¶ 29; Carman Aff., ¶ 8]. Rather, it appears that Westport first learned of the suit when counsel for TBC placed a telephone call to Westport on March 8, 2002, which was over one year after the suit was filed and less than one week before the trial was scheduled to begin. [Carman Aff., ¶ 9, Exhs. D, E].

On that date, March 14, 2002, a mistrial was declared after it was disclosed that Lewis was no longer a licensed attorney having been placed on inactive status by the Supreme Court of Pennsylvania on December 13, 2001. [Complaint ¶ 29; Chaney Aff., ¶ 2, Exh. E]. As such, defendants were ordered to arrange for new counsel and on April 2, 2002, Dennis Glass entered an appearance for PS&L. [Chaney Aff., ¶ 2, Exh. F; Complaint ¶ 29].

It appears that shortly thereafter, on April 8, 2002, counsel for TBC sent Westport a copy of the malpractice complaint TBC had filed against Lewis and PS&L. [Carman Aff., ¶ 9, Exhs. D, E].

Then, on December 19, 2002, Allen T. Lane substituted his appearance for Dennis Glass as counsel for "James A. Lewis & Associates, P.C. formerly known as PS&L," and the trial was rescheduled for January 21, 2003. [Complaint ¶¶ 29, 30; Chaney Aff., ¶ 2, Exh. G]. On that date, a non-jury verdict was entered in favor of TBC and against Lewis and PL&S in the amount of $226,341.50.[4] [Complaint ¶ 30]. TBC was also awarded $20,125.00 in attorney fees and on February 12, 2003, judgment in the amount of $246,466.50 was entered. [Complaint ¶ 31].

Thereafter, on May 21, 2003, Lewis filed a Chapter 7 bankruptcy petition in the U.S. District Bankruptcy Court for the Western District of Pennsylvania, and on September 26, 2003, TBC, to which Lewis had assigned any claim for coverage, filed a Motion for Relief from Stay in order to pursue a case against Westport. [Complaint ¶¶ 33, 36, 37; Chaney Aff., ¶ 3, Exh. I; Olup Aff., Exhs. 8b, 8c]. The motion was granted on October 21, 2003, and on July 2, 2004, TBC filed a praecipe for writ of summons in the Court of Common Pleas of Allegheny County, Pennsylvania. [Chaney Aff., ¶ 2, Exh. J.; Notice of Removal ¶¶ 1-2]. Westport was served on July 27, 2004, and on August 6, 2004, Westport removed the case to this Court based on diversity.[5] [Olup Aff., Exhs. 9, 10]. Over a year later, on August 9, 2005, TBC filed the instant complaint seeking a declaration that Westport is obligated to satisfy the state court judgment in

---

[4] Apparently, no trial took place. Rather, it was represented to the Court by TBC's attorney that counsel for PS&L, who it appears was not present at the time, had agreed to the sum of $226,341.50 in damages which was accepted by the Court. See Chaney Aff., ¶ 2, Exh. H.

[5] According to the Complaint, TBC is a Pennsylvania corporation with its principal place of business in Lawrence, Pennsylvania, and Westport is a Missouri corporation with its principal place of business in Overland Park, Kansas. Complaint ¶¶ 2, 4, 5.

favor of TBC and asking that judgment in favor of TBC and against Westport be entered in the amount of $246,466.56 plus interest.

On November 28, 2006, we issued a Report and Recommendation ("R&R") recommending that the defendant's motion for summary judgment be granted finding that plaintiff did not give notice of the claim at issue "as soon as practicable" as required under the Policy. Although the Policy also provided that where notice of a potential claim is made during the Policy period any claims subsequently made shall be considered made during the Policy period, we found that, reading the Policy as a whole and giving effect to each provision, this did not relieve the insured of notifying the insurer of the actual claim "as soon as practicable."  To find otherwise, we found, would not only fly in the face of the Reporting and Notice Provision as well as the Defense, Investigation and Settlement provision but would defeat the purpose of a "claims-made" policy which provides an end date at which point the insurer will know it is no longer liable.

Plaintiff filed objections on December 8, 2006.  The Honorable Terrence F. McVerry, who was previously assigned to this case, subsequently adopted the R&R and entered Judgment in favor of defendant on December 27, 2006.  On January 12, 2007, Plaintiff filed a Motion to Alter or Amend Judgment Pursuant to Rule 59(e).  Shortly thereafter, Judge McVerry recused and the case was assigned to the Honorable Joy Flowers Conti.  Judge Conti has referred the matter to the undersigned.

Plaintiff has now filed a Motion to Alter or Amend Judgment Pursuant to Rule 59(e) in which it makes essentially two arguments.  First, plaintiff again reiterates that defendant was notified of the potential claim in July of 1999, during the Policy period, but closed its file without taking any further action and was then notified of the actual claim in March of 2002. Second, plaintiff argues, for the first time, that the Policy is ambiguous with respect to when

notice of an actual claim is required after notice of a potential claim has been given and, therefore, should be interpreted in favor of the insured.

### *Legal Standard*

Motions for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure are granted sparingly "[b]ecause federal courts have a strong interest in finality of judgments." Continental Cas. Co. v. Diversified Indus., Inc., 884 F.Supp. 938, 943 (E.D.Pa. 1995).  As the United States Court of Appeals for the Third Circuit has noted, the purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir.1999) (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985)).  "[J]udgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Id. , citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir.1995).  However, "[a] motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." Id., citing Abu-Jamal v. Horn, No. CIV. A. 99-5089, 2001 WL 1609761, at *9 (E.D.Pa. December 18, 2001).

### *Discussion*

In its current motion to alter or amend judgment, plaintiff does not argue that it has newly discovered evidence or that the Court made a manifest error of fact.  Rather, plaintiff asserts that the Court made manifest errors of law by misinterpreting the Policy and failing to find the Policy ambiguous.  Plaintiff's first argument, however, is merely a reiteration of arguments

made in its brief in opposition to summary judgment and in its objections to the R&R and, thus, is not an appropriate basis upon which to alter or amend judgment. Moreover, as previously found, defendant was not notified of the claim/malpractice suit until thirteen months after it had been filed and one week before it was scheduled to go to trial. At that point, it appears that several provisions of the Policy had not been complied with, precluding a finding that coverage was owing. The fact that the trial was subsequently postponed does not alter that conclusion. As well, although plaintiff makes much of the fact that defendant took no action after it was notified of the potential claim in July of 1999, it does not suggest what action should have been taken at that point particularly where the insured had represented to defendant that it anticipated that the default would be lifted and no actual claim would materialize.

As to plaintiff's second argument -- that the Policy is ambiguous -- it cannot be disputed that it is being raised for the first time and that it could have been raised prior to judgment being entered. As such, it is not an appropriate basis for altering or amending the judgment now. Moreover, as pointed out by defendant, plaintiff's argument directly contradicts its earlier assertion that the Notice provisions of the Policy are "clear." As well, as stated in the R&R, an insurance policy must be read as a whole and a proffered interpretation of one provision cannot create an ambiguity if it renders another provision meaningless. Contrans, Inc. v. Ryder Truck Rental, Inc., 836 F.3d 163, 169 (3d Cir. 1987). Plaintiff's reading of the Policy not only requires the Court to ignore the first paragraph of the Notice provision but it eliminates defendant's rights under the Defense, Investigation and Settlement provision all together. The Court's interpretation, however, gives meaning to each provision and, thus, cannot be deemed a manifest error of law.

For the above stated reasons the district court should deny plaintiff's Motion to Alter or Amend Judgment Pursuant to Rule 59(e).

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

> Respectfully submitted,
>
> /s/ *Amy Reynolds Hay*
> AMY REYNOLDS HAY
> United States Magistrate Judge

Dated: 5 February, 2007

cc:   Hon. Joy Flowers Conti
      United States District Judge

      All Counsel of Record by Notice of Electronic Filing